Arthur T. CONLEY, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of
Health, Education and Welfare,
Defendant.

Civ. No. 628–59–TC.

United States District Court
S. D. California,
Central Division.

April 20, 1960.

Arthur T. Conley, plaintiff, in pro. per.

Laughlin E. Waters, U. S. Atty., by
Henry P. Johnson, Asst. U. S. Atty.,
Los Angeles, Cal., for defendant.

THURMOND CLARKE, District
Judge.

 This is an action for judicial review of a final decision of the Secretary of Health, Education and Welfare, dated November 10, 1958, denying plaintiff's claim for old age benefits under the Social Security Act. The Federal District Court has jurisdiction of this matter under sec. 205(g) of the Act (42 U.S.C.A. § 405(g)), conclusive weight to be accorded to such factual determinations of the administrative hearings below as are supported by substantial evidence on the record as a whole.

Upon a thorough review of the record on this appeal, the court is satisfied that the findings of the referee below as to the acts of the claimant which are alleged to bring him within the coverage of the Act are exhaustive and supported throughout by competent evidence; such findings must be relied upon in our determination of the legal contention that claimant's duties and prerogatives under certain share-crop agreements, as performed and exercised by him, were sufficient to bring him within the scope of coverage of sec. 211(a) (1) of the Social Security Act as amended in 1956.

Mr. Conley must, in order to prevail here, have "materially participated" in the production or the *management* of production of agricultural commodities upon lands of which he was the fee owner. In other words, we must find that the facts as found by the referee justify a conclusion as a matter of law that there was such participation. Otherwise defend-

ant's motion for summary judgment must be granted forthwith.

 Viewing the operational facts in this matter in the light most favorable to plaintiff, we find that his positive contributions and obligations under the share-crop agreements were as follows: Plaintiff was to direct what crops were to be planted, and in which fields, and was to direct what fields were to be fertilized. The lessees were to furnish one-third of the fertilizer, and were to furnish all other necessary tools, seed, etc., and in general, to "farm said land for the best interests of the first party (Conley) and without any participation by first party" (transcript, p. 111). Plaintiff went to his farm from California twice yearly in the period relevant to this litigation, remaining for one day in the spring at planting time, and two weeks at harvest season. Plaintiff also corresponded with the lessees, and offered advice and directions as to conservation practices, fallowing, and matters related to the maintenance of his farm's productivity. The conclusion is inescapable that plaintiff maintained and exercised by virtue of the share-crop agreement directorial capacities in relation to the welfare and value of his land; the crucial question is whether a distinction must be drawn in terms of the purposes of the Social Security legislation between such broad, general policy-making powers as were retained by Mr. Conley and the more time-consuming problems of actual management of the farming enterprise. The analogy to corporate directors as opposed to corporate management naturally suggests itself in this connection, and may serve to elucidate the sort of distinction considered here; but it is clearly too far-fetched to play any role in the solution of the problem at hand.

The referee in this matter interprets the pertinent legislation to require that "managerial participation" pertain to operations connected with the growing of the crop or the *operation* of the farm. The record bears out the referee's finding that:

"The record does not show that the claimant gave substantial consultation and advice as to how things were to be done in producing the commodities. Although he reserved the right to designate what and where to plant and also took an interest in the condition of his farm it appears that the claimant's interest related more to maintaining the fertility of the soil and to the reduction of crops to cash income, rather than to the actual production of the crops. It further appears that the extent of the claimant's activities was that of an absentee landlord interested primarily in the protection and enhancement of his investment. There is no satisfactory showing that by the rental arrangement the claimant reserved and exercised the right to substantial supervision and direction in the actual production of the crops." (Trans. p. 83).

In view of the foregoing, it is quite apparent that to hold plaintiff entitled to old age benefits would be to extend Social Security coverage to investors in farming land, and not by virtue of their personal contributions of time and labor to the exploitation of such land, but by virtue of their bargaining to obtain certain broad supervisory powers over those who as lessees actually engage in the production of commodities from the land. We are convinced that the legislation in question was not meant to, and does not by its terms justify the coverage of absentee farm owners; the whole design of the Act and of this part of it is to insure against losses in income arising from inability through age or otherwise to perform work on an individual basis; and we regret to say that Mr. Conley's capital is a great deal more involved here than is his labor.

Summary judgment will be granted to defendant in this matter, appropriate order to be lodged with the Clerk of this

Court by attorney for the defendant within 10 days of the filing of this memorandum.

It Is Ordered that the Clerk shall this day serve copies of this memorandum upon the attorneys for the parties to this cause by United States mail.